## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Hutton Construction, Inc.**

v.

Case No. 21-cv-706-PB
Opinion No. 2022 DNH 076

**Continental Western**
**Insurance Company**

## MEMORANDUM AND ORDER

This insurance coverage case stems from a subcontractor's defective masonry work. The principal issue presented by the insurer's motion for partial summary judgment is whether the subcontractor's comprehensive general liability policy covers stipulated delay damages that the general contractor incurred when the subcontractor's faulty work caused a building inspector to issue a stop-work order for the entire project.

## I.     BACKGROUND

In 2018, Hutton Construction Inc. entered into a build-to-suit lease with O'Reilly's Auto Enterprises, LLC to construct an auto parts store on property Hutton owned in Ossipee, New Hampshire. The lease required construction be completed within 125 days and imposed stipulated damages of $1,000 for each additional day that the project remained unfinished.

Hutton served as the general contractor for the project and subcontracted with Frederick A. Meyer III & Sons, Inc. to construct the building's exterior masonry walls. The subcontract obligated Meyer to complete the masonry work per the stipulated schedule and indemnify Hutton against any claims, damages, or losses caused in whole or in part by Meyer's negligence. Construction began in July and was scheduled to be finished in November. After Meyer completed a sufficient portion of the exterior masonry work, Hutton began work on the roof and the interior of the building.

While the work was ongoing, the Ossipee building inspector identified defects in Meyer's masonry work, including a lack of proper grouting of the concrete blocks that formed the walls. After Meyer failed to address the inspector's concerns, he issued a "stop-work order" in October that required all work on the project to cease immediately. In support of his order, the inspector cited Meyer's failures to properly grout concrete blocks and correctly install steel anchors that connected the roof framing to the walls. Both defects potentially threatened the building's structural integrity.

The stop-work order remained in place for about thirteen months. During that time, water seeped into the building through the defective masonry walls and the unfinished roof, damaging Hutton's work on the interior. The water damage included moldy sheetrock, rusty metal studs, and

water-filled insulation. After the stop-work order was lifted, Hutton needed two additional months to fix the water damage and complete the project. Meanwhile, Meyer fixed the defective masonry at its own expense.

The construction delay left Hutton responsible to O'Reilly's for stipulated damages of close to half a million dollars. Hutton subsequently demanded that Meyer reimburse it for both the stipulated damages and the costs it incurred to repair the water damage. Meyer submitted a claim for coverage under a commercial general liability ("CGL") insurance policy it had purchased from Continental Western Insurance Company. After Continental denied coverage, Meyer assigned Hutton its rights under the policy. Hutton then filed this declaratory judgment action in state court, and Continental later removed the case to federal court. Continental now moves for partial summary judgment, limited to Hutton's claim for the stipulated delay damages. Hutton objects.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (cleaned up). A "genuine dispute"

exists if a factfinder could resolve the disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." Irobe, 890 F.3d at 377 (cleaned up). If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

Under New Hampshire law, the interpretation of an insurance policy is a question of law. Town of Londonderry v. N.H. Mun. Ass'n Prop. Liab. Ins. Tr., Inc., 140 N.H. 440, 441 (1995). "Where disputed terms are not defined in a policy or by State judicial precedent, [courts] apply an objective standard, construing the terms in context and as would a reasonable person in the position of the insured, based upon more than a casual reading of the policy

as a whole." Cath. Med. Ctr. v. Exec. Risk Indem., Inc., 151 N.H. 699, 701 (2005) (quoting Panciocco v. Lawyers Title Ins. Corp., 147 N.H. 610, 613 (2002)). Ambiguities in a policy must be resolved in favor of coverage. Philbrick v. Liberty Mut. Fire Ins. Co., 156 N.H. 389, 391 (2007). The insurer has the burden to prove that coverage is unavailable. Maville v. Peerless Ins. Co., 141 N.H. 317, 320 (1996).

### III.   ANALYSIS

Continental cites three different policy provisions to support its refusal to cover Hutton's claims against Meyer. First, it argues that any property damage Hutton suffered was not caused by an "occurrence." Second, it argues that the stipulated delay damages Hutton paid to O'Reilly's are not a covered form of "property damage." Finally, it argues that Meyer's right to coverage is barred by the policy's "your work" exclusion.

### A.   Occurrence

The Continental policy is a standard-form CGL policy. The insuring agreement provides that Continental will "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Doc. No. 11–3 at 164. Coverage is available under the policy, however, only if "'property damage' is caused by an 'occurrence.'" Id. An "occurrence" is defined as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions." Id. at 178. The term "accident" is not defined in the policy.

Continental argues that the stipulated delay damages Hutton incurred, both while the stop-work order was in effect and while Hutton was repairing the water damage, were not caused by an occurrence because they resulted from Meyer's defective workmanship. In pressing this argument, Continental relies on the general rule in New Hampshire that faulty workmanship is not sufficiently fortuitous to qualify as an occurrence, at least when the claim seeks coverage for the cost of repairing the defective work itself. See, e.g., McAllister v. Peerless Ins. Co., 124 N.H. 676, 680 (1984). Hutton responds first by claiming that the existence of damage to property other than the defective masonry — the physical damage to the building's interior and the loss of use of the entire building — satisfies the occurrence requirement. In the alternative, to the extent damage to nondefective property is not sufficient by itself, Hutton argues that the issuance of the stop-work order and the water damage that occurred while the stop-work order was in effect are each intervening fortuitous events that satisfy the occurrence requirement. I take up these arguments in turn after providing a brief summary of ways in which similar arguments have been addressed elsewhere.

### 1. Defective workmanship and the occurrence requirement.

Courts across the country are divided on when faulty workmanship will be deemed to be an occurrence under a standard-form CGL policy. See Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co., 661 F.3d 1272, 1282–83 (10th Cir. 2011) (surveying caselaw and analyzing trends). At issue is whether defective workmanship is an "accident," which is a necessary component of an occurrence. A growing number of states have held that defective workmanship is an accident, regardless of whether the injury is limited to the insured's work product or extends to other property, as long as it is unintended and unexpected from the standpoint of the insured. See, e.g., Am. Empire Surplus Line Ins. Co. v. Hathaway Dev. Co., 707 S.E.2d 369 (Ga. 2011); Sheehan Constr. Co. v. Continental Cas. Co., 935 N.E.2d 160 (Ind. 2010); Architex Ass'n, Inc. v. Scottsdale Ins. Co., 27 So.3d 1148 (Miss. 2010); Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1 (Tex. 2007). These courts generally reason that "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." Lamar, 242 S.W.3d at 8. This approach rejects the notion that an occurrence should be interpreted more narrowly on public policy grounds, namely, that damages caused by faulty workmanship represent a business risk that performance bonds, not CGL policies, are meant to cover. See id. at

10. Instead, courts that follow this reasoning have explained that any limitations on coverage for the general business risks presented by faulty workmanship are best addressed by policy exclusions, such as the "your work" exclusion, that typically bar coverage for the cost of repairing damage to the insured's own work. See id. This line of cases also rejects the argument that the term "accident" necessarily requires truly fortuitous circumstances that faulty workmanship alone cannot satisfy. Some have reasoned that fortuity is not a prerequisite to finding an accident, while others have explained that the insured's faulty work satisfies the fortuity requirement as long as it is unintended and unexpected. Compare id. at 16, with Greystone, 661 F.3d at 1285.

New Hampshire is aligned with other jurisdictions that refuse to treat faulty workmanship as an occurrence when it results in damage only to the insured's defective work product. See, e.g., Cincinnati Ins. Co. v. Motorists Mut. Ins. Co., 306 S.W.3d 69 (Ky. 2010); Essex Ins. Co. v. Holder, 261 S.W.3d 456 (Ark. 2007); Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888 (Pa. 2006); Auto–Owners Ins. Co. v. Home Pride Cos., 684 N.W.2d 571 (Neb. 2004); McAllister, 124 N.H. at 680. Although some courts have reached this result based on the business risk rule, the more prevalent rationale focuses on the concept of fortuity. See Home Pride, 684 N.W.2d at 577. Fortuity is inherent in the plain meaning of "accident,"

these courts reason, and damage to defective work, standing alone, ordinarily is not fortuitous. Id. (citing McAllister, 124 N.H. at 680).

Courts in this second group diverge when the insured's faulty work also results in damage to nondefective property. Some courts have held that defective workmanship will be deemed to be accidental to the extent that it results in damage to nondefective property, even when the sole cause of the damage is the insured's defective workmanship. See, e.g., Home Pride, 684 N.W.2d at 578–79; Wardcraft Homes, Inc. v. Emp'rs Mut. Cas. Co., 70 F. Supp. 3d 1198, 1204–07 (D. Colo. 2014). Others have concluded that damage to nondefective property caused by faulty workmanship will be treated as accidental only when it is followed by a fortuitous event or exposure that results in damage to the nondefective property. See, e.g., Pa. Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Par., 790 F.3d 1173, 1180 (11th Cir. 2015) (holding, under Alabama law, that repeated exposure to water that came through improperly installed shingles and damaged ceilings constituted an occurrence); French v. Assurance Co. of Am., 448 F.3d 693, 704 (4th Cir. 2006) (applying Maryland law and holding that "moisture intrusion into the nondefective structure and walls of the [plaintiffs'] home was an accident" that resulted from subcontractor's defective installation of exterior stucco); Burlington Ins. Co. v. Shelter Structures, Inc., 484 F. Supp. 3d 237, 243–45 (E.D. Pa. 2020) (rejecting insured's argument that existence of damage to

9

nondefective property from faulty workmanship constitutes an occurrence under Pennsylvania law absent some "unexpected and undesirable event"); Auto Owners Ins. Co. v. Newman, 684 S.E.2d 541, 544 (S.C. 2009) ("[A]lthough the subcontractor's negligent application of the stucco does not on its own constitute an 'occurrence,' we find that the continuous moisture intrusion resulting from the subcontractor's negligence is an 'occurrence' as defined by the CGL policy."). Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc., 673 N.W.2d 65, 76 (Wis. 2004) (finding settlement of soil underneath building to constitute an occurrence that resulted from subcontractor's faulty site-preparation advice).

## 2. Defective workmanship and damage to nondefective property.

The parties agree that an insured's defective workmanship does not give rise to an occurrence under New Hampshire law if the only resulting damage is to the defective work itself. See, e.g., Concord Gen. Mut. Ins. Co. v. Green & Co. Bldg. & Dev. Corp., 160 N.H. 690, 693 (2010); McAllister, 124 N.H. at 680; Hull v. Berkshire Mut. Ins. Co., 121 N.H. 230, 231 (1981). They disagree, however, as to which approach New Hampshire courts will follow when defective workmanship also results in damage to nondefective property. Hutton contends that such damage always satisfies the occurrence requirement. Continental argues that damage to nondefective property is not

sufficient absent some intervening event that is truly fortuitous. Although the New Hampshire Supreme Court has not squarely answered this question, a close reading of its precedent suggests that an intervening fortuitous event or exposure is required.

The New Hampshire Supreme Court has interpreted the term "accident" in a CGL policy to mean "an undesigned contingency, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." EnergyNorth Nat. Gas v. Cont'l Ins. Co., 146 N.H. 156, 160 (2001) (quoting Vermont Mut. Ins. Co. v. Malcolm, 128 N.H. 521, 523 (1986)). An accident can refer to "circumstances, not necessarily a sudden and identifiable event, that were unexpected or unintended from the standpoint of the insured." High Country Assocs. v. N.H. Ins. Co., 139 N.H. 39, 44 (1994). The focus is on whether the event causing the injury was accidental from the perspective of the insured. Vermont Mut., 128 N.H. at 523.

Applying these principles, the New Hampshire Supreme Court has found the occurrence requirement satisfied in several cases that involved faulty work that caused injury to nondefective property. See Webster v. Acadia Ins. Co., 156 N.H. 317, 322 (2007); High Country, 139 N.H. at 44; M. Mooney Corp. v. U.S. Fid. & Guar. Co., 136 N.H. 463, 469–70 (1992). A close examination of the facts of these cases, however, reveals that in each such

11

case, a fortuitous intervening event was critical to the court's finding that the damage claimed was caused by accident.

In Webster, a contractor negligently constructed a replacement roof on a school gymnasium. As a result of the faulty workmanship, snow that had accumulated on the roof following a heavy snowstorm caused buckling and separation of the purlins that provided structural support to the roof. The contractor's insurer refused to provide a defense after the school sued the contractor for the physical injury to the purlins. See 156 N.H. at 318, 322–23. The insurer argued that the CGL policy did not cover damage to the purlins because there was no occurrence under the policy. The New Hampshire Supreme Court disagreed. The court first distinguished its prior decision in McAllister because the school sought damages for the nondefective purlins rather than the defective roof itself. Id. at 322. The court then found that the damage to the purlins was an accident because it was "first caused or aggravated by the snowstorm," an event that "was unexpected from the standpoint of the [insured], especially given that its work did not include the purlins." Id. at 323. Accordingly, the court held that the unexpected damage to the purlins from the snow accumulation was caused by an occurrence.

The court relied in Webster on its prior decision in High Country, where it had found an occurrence based on analogous facts. See id. at 322–23. In High Country, condominium owners sued their builder for the defective

installation of siding. The defective siding allowed moisture to seep into the buildings, causing widespread decay of the interior and exterior walls and loss of structural integrity. High Country, 139 N.H. at 41. The builder's insurer denied coverage asserting that the builder's defective workmanship did not constitute an occurrence under the applicable CGL policy. The court rejected the insurer's argument that the complaint asserted only an uncovered claim for faulty workmanship because the condominium owners "alleged actual damage to the buildings caused by exposure to water seeping into the walls that resulted from the negligent construction methods" of the builder. Id. at 43. The court thus emphasized that the defective siding did not, by itself, erode the interior and exterior walls. Rather, the defective siding enabled an intervening event — water infiltration — to damage the nondefective walls. For this reason, the plaintiffs had properly "alleged negligent construction that resulted in an occurrence, rather than an occurrence of alleged negligent construction." Id. at 45.

The court reached a similar outcome in Mooney. In that case, the general contractor for a condominium project was sued for negligent construction after one of the units was damaged by a chimney fire and the State fire marshal prohibited further use of fireplaces in the remaining units. Mooney, 136 N.H. at 465. The court held that the fire in one unit was an occurrence that caused the loss of use of fireplaces in all units. Id. at 468–70.

13

Again, faulty workmanship had allowed an intervening event (the fire) to cause loss of use of property that was not physically injured.

Hutton has failed to identify a single New Hampshire Supreme Court case that directly supports it contention that faulty workmanship will always constitute an occurrence if it results in damage to nondefective property, and I have found none. Although Hutton invokes Green to support its argument, its reliance on that case is misplaced. In Green, the court held that the insured was not entitled to coverage for defective workmanship because it did not cause any damage to nondefective property. 160 N.H. at 693. Thus, any suggestion in Green that faulty workmanship will always be deemed to be accidental if it results in damage to nondefective property is nothing more than dictum.

Hutton's reading of Green is also problematic because it requires a logical leap that is not explained in either the decision itself or in any of the other cases where the court expressly dealt with claims for coverage of damage to nondefective property. As one court in another jurisdiction has described this problem, "[t]he logical basis for the distinction between damage to the work itself (not caused by an occurrence) and damage to collateral property (caused by an occurrence) is less than clear. Both types of property damage are caused by the same thing — negligent or defective work. One type of damage is no more accidental than the other." Erie Ins. Exch. v.

Colony Dev. Corp., 736 N.E. 2d 950, 952 n.1 (Ohio App. 2000). Because Hutton has failed to fill this gap in its reasoning, I am disinclined to adopt its expansive reading of Green.

Finally, Hutton's reliance on Green for the proposition that an intervening fortuitous event or exposure is not required when faulty workmanship causes damage to nondefective property is especially problematic because that case involved an intervening fortuitous event — the infusion of carbon monoxide into claimants' houses through defective chimneys — but no resulting damage to nondefective property. See 160 N.H. at 694. Thus, there is no reasonable way in which Green can be read to support Hutton's argument.

In sum, based on my analysis of New Hampshire cases, I agree with Continental that damage to nondefective property caused by defective workmanship will not give rise to an occurrence under the policy without an intervening event or exposure that occurs fortuitously and, together with the defective work, harms nondefective property.

### 3. The stop-work order and resulting water damage.

Hutton next argues that the building inspector's stop-work order and the water infiltration are each intervening fortuitous events that satisfy the occurrence requirement. Although I agree that the water infiltration that damaged the property while the stop-work order was in effect was a

15

fortuitous event that satisfies the occurrence requirement, I am unpersuaded by Hutton's claim that the stop-work order itself was fortuitous.

In this case, as in High Country, a subcontractor's defective work allowed water to penetrate a building and damage nondefective property, causing moldy sheetrock, rusty metal studs, and water-filled insulation. See 139 N.H. at 43. The intervening water exposure led to a two-month delay in the completion of the project, during which Hutton had to repair the damage to the interior of the building. Accordingly, the stipulated damages incurred during the two-month delay were caused by an occurrence.

Hutton's broader claim that the stop-work order itself is a fortuitous event suffers from two fatal defects. First, the stop-work order was not an intervening chance event but an expected consequence of the defective masonry work. Pursuant to his duties under state and local law, the building inspector monitored the project to ensure compliance with the building code. See N.H. Rev. Stat. Ann. § 674:51, III(c). The inspector could issue a cease-and-desist order against any violations of the building code or the applicable regulations. See id. § 676:17–a. Because Meyer had failed to construct the masonry walls according to the code standards, the building inspector merely enforced the law by ordering all work on the project to cease. Thus, unlike the water infiltration, the stop-work order was not "a happening by chance" but

was "naturally to be expected" when Meyer violated the building code. See Vermont Mut., 128 N.H. at 523 (cleaned up).

The New Hampshire Supreme Court's decision in Mooney supports the view that the stop-work order was not an occurrence. Although the court did not expressly consider in Mooney whether a fire marshal's order prohibiting the use of fireplaces was an occurrence, its reasoning suggests that the order was instead an expected consequence of faulty workmanship. See Mooney, 136 N.H. at 468. The court noted that the fire marshal used his statutory authority to enforce fire safety standards after his investigation of the chimney fire in one of the units identified defective work that caused all fireplaces to be unsafe. Id. Despite concluding that "the fire marshal's order . . . resulted in the loss of use of tangible property in all units," id., the court did not consider the order to be an occurrence and instead concluded that it was the fire that was the fortuitous event that led to the fire marshal's order. See id. at 468–70. Like the building inspector, the fire marshal detected defective work while performing his duties and used his authority to address violations of the law. Neither enforcement order constituted a chance event; each was a "natural and ordinary consequence" of failing to build according to standards set by law. Cf. 9A Couch on Insurance § 126:26.

As Hutton points out, the building inspector's order was not within Meyer's control in that the inspector independently determined that the

17

building code was violated and how the violation needed to be remedied. But that alone does not transform the stop-work order into a fortuitous event. Meyer had control over the construction of the masonry walls and the resulting violation of the building code. Because the stop-work order resulted from Meyer's defective work, not some chance triggering event or exposure, the stop-work order was not an accident under the policy.

Even if a stop-work order could be deemed to be fortuitous if the insured does not expect it, however, the undisputed facts in this case show that Meyer was aware of the building inspector's concerns before the issuance of the stop-work order. The building inspector identified a violation of the building code — the lack of proper grouting of the concrete blocks — and Meyer failed to correct the defective work before the inspector issued the stop-work order. Especially when defects are identified prior to an enforcement order and the insured does not remedy them, the order is not accidental because, from the perspective of the insured, it was expected.

The Arizona Court of Appeals faced analogous circumstances in Western Casualty and Surety Company v. Hays, 781 P.2d 38 (Ariz. Ct. App. 1989). In that case, the Hays sold land to the Mollets, who intended to plant jojoba. A state agency later designated the surrounding basin as an "irrigation non-expansion area," thereby precluding the Mollets from watering their crops. Id. at 39. The Mollets sued the Hays, who in turn looked

to their insurer to defend the action. In upholding the insurer's decision not to defend, the court rejected the Hays's argument that the state agency's order resulting in the cessation of irrigation was unexpected and unintended merely because the Hays neither expected nor intended its issuance. Id. at 40. Labeling that argument "too simplistic to be realistic," the court held that no occurrence had transpired. Id. The court reasoned that the state agency had begun the process that led to the non-irrigation order, including holding a public hearing, well before the Hays sold the land to the Mollets. Id. Thus, it could not "seriously be contended" that the actions of the state agency, done within the purview of its authority, "were unintended and unexpected." Id. So too here. Given that the building inspector had voiced his concerns about Meyer's defective work before issuing the stop-work order, it cannot be claimed that his order was unexpected from the insured's standpoint.

Because Hutton cannot point to an intervening event that fortuitously caused the delay while the stop-work order was in effect, its claim for coverage of the stipulated damages incurred during that period must fail.

**B.** **Property Damage**

Continental next argues that Hutton's stipulated delay damages cannot qualify as "property damage" because they are not a measure of injury to the property but are contractual damages meant to compensate for economic loss.

Hutton asserts that the damages were incurred "because of" covered property damage and that its claim against Meyer sounds in tort, not contract.

The policy provides that Continental must pay any "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Doc. No. 11–3 at 164. "Property damage," in turn, includes "[p]hysical injury to tangible property, including all resulting loss of use of that property," as well as "[l]oss of use of tangible property that is not physically injured." Id. at 178.

Continental argues that the delay damages do not constitute "property damage" because they did not arise from the property owner's lost use of the building but instead seek to compensate for economic loss. I need not determine, however, whether the delay damages themselves constitute loss-of-use "property damage." As Hutton points out, the policy language is broader than "property damage" and expressly covers damages incurred "because of . . . 'property damage.'" Doc. No. 11–3 at 164 (emphasis added). Many courts and treatises have taken an expansive view of damages incurred "because of" property damage to include "a broad array of consequential damages, not simply those that constitute a measure of the injury to the property itself." Berry Plastics Corp. v. Ill. Nat'l Ins. Co., 903 F.3d 630, 639 (7th Cir. 2018); see id. at 640–41 (collecting authorities). In this context, consequential damages "are those that naturally flow from the property

damage without direct human intervention." 4 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 11:232 (2021). Following this reasoning, several courts have found that construction delay damages that directly result from covered property damage are entitled to coverage as consequential damages incurred "because of" property damage. See, e.g., Edward E. Gillen Co. v. Ins. Co. of Pa., 874 F. Supp. 2d 755, 758 (E.D. Wis. 2012); Clark Constr. Grp., Inc. v. Eagle Amalgamated Serv., Inc., 2005 WL 2092998, at *3–4 (W.D. Tenn. Aug. 24, 2005); Mattiola Constr. Corp. v. Com. Union Ins. Co., 2002 WL 434296, at *2–4 (Pa. Ct. Comm. Pl. 2002); Dimambro–Northend Assoc. v. United Constr., Inc., 397 N.W.2d 547, 550–51 (Mich. App. 1986). I agree with those courts. The policy language is, at the very least, ambiguous and susceptible to a reasonable interpretation that delay damages arising from "property damage" are covered.

Applying that interpretation to the facts here leads me to conclude that the policy covers the delay damages incurred while Hutton was repairing the water damage. The water damage plainly falls within the scope of "property damage" because it constituted "[p]hysical injury to tangible property" that resulted in "loss of use of that property." Doc. No. 11–3 at 178. The two-month delay while Hutton worked to repair the water-damaged property directly resulted from that property damage. The associated delay damages, therefore, naturally flowed from covered property damage. If, as a result of

the underlying action, Meyer must pay the delay damages, then those damages would be sums that Meyer is "legally obligated to pay as damages because of . . . 'property damage'" to which the CGL policy applies. See Doc. No. 11–3 at 164.

Continental's alternative argument that the stipulated delay damages are not covered because they are based on contractual liability also fails to persuade. The First Circuit has agreed with "established, well-grounded law" that the phrase "legally obligated to pay as damages" in a CGL policy applies only to tort liability and not contractual liability. See Lopez & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 67–68 (1st Cir. 2012). But the court has also explained that this phrase "refers exclusively 'to the liability of the insured arising from the breach of a duty that exists independent of any contractual relationship between the insured and the injured party.'" Id. at 67 (quoting 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 7.01, at 469 (15th ed. 2010)).

Although Hutton's contract with Meyer required Meyer to indemnify Hutton for any damages caused by Meyer's negligence, Meyer had an independent duty of reasonable care that it allegedly breached when constructing the masonry walls. Thus, Hutton could sue Meyer for negligence irrespective of the indemnification provision. If Hutton succeeds on that claim, the basis for Meyer's liability would be in tort, not contract, satisfying

the insuring agreement's requirement that coverage be limited to amounts the insured is "legally obligated to pay as damages." Cf. Restatement (Third) of Torts § 3, cmt. (2020) ("An actor whose negligence causes personal injury or physical harm to the property of another can be held liable in tort regardless of whether the negligence occurs in the performance of a contract between the parties."); Ewing Constr. Co. v. Amerisure Ins. Co., 420 S.W.3d 30, 37–38 (Tex. 2014) (contractual liability exclusion in CGL policy does not apply when breach of contract would be actionable in tort even absent a contract).

The two cases that Continental cites for the proposition that the insuring agreement does not cover stipulated damages are distinguishable. Those courts held that an insured's contractual liability for economic loss does not constitute "property damage." See Lyerla v. AMCO Ins. Co., 536 F.3d 684, 692 (7th Cir. 2008); Kvaerner N. Am. Constr. Inc. v. Certain Underwriters at Lloyd's London Subscribing to Pol'y No. 509/DL486507, 2017 WL 2821691, at *11 (N.D.W. Va. June 28, 2017). Unlike in those cases, where the insured had contracted to pay stipulated damages and later sought coverage for breach of contract claims, Meyer was not a party to the lease agreement and the claim against it sounds in tort, not contract. In addition, those courts considered whether stipulated damages constitute property damage in and of themselves, rather than evaluating whether they are covered as consequential damages incurred "because of" covered property

damage. Cf. 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 7.06, at 598–601 (18th ed. 2017) (distinguishing cases holding that economic damages are not recoverable "property damage" from cases holding that consequential economic damages are covered when incurred "because of" actual property damage). Their persuasive authority is, therefore, limited.

Given the principle that a reasonable construction that affords coverage should be adopted, I conclude that the insuring language of the Continental policy covers any delay damages that Meyer must pay to Hutton because of the water damage to Hutton's property.

## C.    "Your Work" Exclusion

Continental's final pitch is that the "your work" exclusion bars coverage for Hutton's delay damages. Those damages, Continental claims, "arose solely out of the time and resources spent to repair Meyer's alleged defective construction of the walls." Doc. No. 11–1 at 12. Hutton, naturally, disagrees.

The New Hampshire Supreme Court has rejected the notion that the "your work" exclusion operates to "preclude coverage for all damage resulting from [an insured's] defective work, including damage to the non-defectively constructed" property. Cogswell Farm Condo. Ass'n v. Tower Grp., Inc., 167 N.H. 245, 251 (2015). Instead, the court has narrowly construed the exclusion to bar coverage "only for those parts of the property on which the allegedly

defective work was done." Id. Here, nondefective property — Hutton's work-product on the interior of the building — was damaged as a result of Meyer's defective work on the exterior masonry walls. Because the repairs that necessitated the construction delay were done on property that was not defectively built by the insured, damages flowing from the delay fall outside the scope of the "your work" exclusion.

## IV. **CONCLUSION**

For the foregoing reasons, Continental's motion for partial summary judgment (Doc. No. 11) is granted with respect to the claim for stipulated damages imposed throughout the stop-work order and denied with respect to the claim for stipulated damages for the two-month period during which Hutton had to repair the water damage occasioned by Meyer's defective work.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

July 5, 2022

cc:    Counsel of record